GIBSON, DUNN & CRUTCHER LLP
MARCELLUS A. MCRAE, SBN 140308
  Mmcrae@gibsondunn.com
HEATHER L. RICHARDSON, SBN 246517
  HRichardson@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  BHamburger@gibsondunn.com
TIAUNIA HENRY, SBN 254323
  THenry@gibsondunn.com
DANIEL NOWICKI, SBN 304716
  DNowicki@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071
Telephone:   213.229.7000
Facsimile:   213.229.7520

Attorneys for Defendants State Farm Mutual
Automobile Insurance Company (erroneously
sued as State Farm Mutual, Inc.), State Farm
General Insurance Company (erroneously sued as
State Farm General Incorporated), and State
Farm Life Insurance Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEL STEVENS and LADALE JACKSON, individually and on behalf of all similarly situated, | CASE NO. 2:22-CV-06362 FLA (MAAx) |
| Plaintiffs, | **MEMORANDUM OF DEFENDANTS STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM GENERAL INSURANCE COMPANY, AND STATE FARM LIFE INSURANCE COMPANY IN SUPPORT OF MOTION TO DISMISS** |
| v. | |
| STATE FARM MUTUAL, INC.; STATE FARM GENERAL INCORPORATED; STATE FARM LIFE INSURANCE COMPANY; and DOES 1 through 50, inclusive, | Hon. Fernando L. Aenlle-Rocha |
| Defendants. | Hearing Date:   January 20, 2023 |
| | Action Filed:   July 6, 2022 |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ..................................................................................... 1

II.  SUMMARY OF ALLEGATIONS ........................................................... 4

III. PROCEDURAL HISTORY ....................................................................... 6

IV.  LEGAL STANDARD ............................................................................... 7

V.   ARGUMENT ............................................................................................. 8

     A.   Plaintiffs Cannot Demand That State Farm Violate the Law ................... 9

     B.   Plaintiffs Have Failed to Plead a Viable Unruh Act Claim ..................... 11

          1.   Plaintiffs Do Not Allege Any Intentional Discrimination ............. 11

          2.   Plaintiffs Cannot Bring a Disparate Impact Claim ....................... 12

     C.   Plaintiffs' Negligence Claim Fails ............................................................ 13

          1.   The Economic Loss Rule Bars Plaintiffs' Attempt to Use a
               Negligence Claim to Sue Over Insurance Premiums .................... 13

          2.   There Is No Tort Duty of Care Governing the Calculation of
               Insurance Premiums ...................................................................... 15

          3.   Plaintiffs Have Not Alleged Any Negligence Caused Them
               Harm ............................................................................................. 18

     D.   Plaintiffs Allege No Violation of Insurance Code Section 10140 ........... 19

     E.   The Follow-On UCL Claim Fails ............................................................. 21

VI.  CONCLUSION ......................................................................................... 21

Gibson, Dunn & Crutcher LLP

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................... 7, 8

*Bally v. State Farm Life Ins. Co.,*
536 F. Supp. 3d 495 (N.D. Cal. 2021) ....................................... 14

*Bassidji v. Goe,*
413 F.3d 928 (9th Cir. 2005) ................................................. 10, 11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................................... 7, 8

*Bily v. Arthur Young & Co.,*
3 Cal. 4th 370 (1992) ...................................................................... 15

*Bromme v. Pavitt,*
5 Cal. App. 4th 1487 (1992) ......................................................... 19

*Davis v. HSBC Bank Nevada, N.A.,*
691 F.3d 1152 (9th Cir. 2012) ................................................. 4, 21

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
751 F.3d 990 (9th Cir. 2014) .......................................................... 8

*Goodman v. Lozano,*
47 Cal. 4th 1327 (2010) ................................................................. 19

*In re Google Assistant Priv. Litig.,*
457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................... 4, 21

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.,*
742 F.3d 414 (9th Cir. 2014) ......................................................... 13

*Harris v. Cap. Growth Invs. XIV,*
52 Cal. 3d 1142 (1991) ................................................................... 20

*Jonathan Neil & Assoc., Inc. v. Jones,*
33 Cal. 4th 917 (2004) ............................................................ 14, 15

Gibson, Dunn & Crutcher LLP

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

*Kirsh v. State Farm Mut. Auto. Ins. Co.*,
    284 Cal. Rptr. 260 (1991) ........................................................................ 10

*Koebke v. Bernardo Heights Country Club*,
    36 Cal. 4th 824 (2005) ................................................... 2, 12, 13, 20

*Leadsinger, Inc. v. BMG Music Pub.*,
    512 F.3d 522 (9th Cir. 2008) ............................................................ 11

*Levine v. Blue Shield of California*,
    189 Cal. App. 4th 1117 (2010) .............................................. 15, 16, 18

*Long Beach Mem'l Med. Ctr. v. Kaiser Found. Health Plan, Inc.*,
    71 Cal. App. 5th 323 (2021) ................................................. 16, 17, 18

*Martinez v. Cot'n Wash, Inc.*,
    81 Cal. App. 5th 1026 (2022) ............................................................ 12

*People v. Superior Ct. (Ruiz)*,
    187 Cal. App. 3d 686 (1986) ............................................................ 10

*S. California Gas Leak Cases*,
    7 Cal. 5th 391(2019) ......................................................................... 13

*Seismic Reservoir 2020, Inc. v. Paulsson*,
    785 F.3d 330 (9th Cir. 2015) .............................................................. 8

*Sheen v. Wells Fargo Bank, N.A.*,
    12 Cal. 5th 905 (2022) ....................................................... 3, 13, 14, 15

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ............................................................ 8

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ...................................................... 8, 19

**STATUTES**

Cal. Civ. Code § 51(c) ............................................................................ 20

Cal. Ins. Code § 10140(a) ............................................... 1, 2, 9, 10, 19, 20

Cal. Ins. Code § 10141 ...................................................... 1, 2, 9, 10, 19

**OTHER AUTHORITIES**

Farnsworth, *The Economic Loss Rule*, 50 Val. U. L. Rev. 545 (2016) .........................14

Legislative Counsel's Digest, California Assembly Bill 1266 (March 26, 1969) .......20

15A C.J.S. Common Law § 17 ......................................................................................10

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## I.   INTRODUCTION

Although Plaintiffs frame this case in terms of race discrimination, the central allegation in the complaint is that State Farm did *not* discriminate based on race.  The liability theory here is that State Farm violated the law by not taking race into account and by instead treating African-American life insurance applicants just like applicants of all other races.  The Court should dismiss the complaint in its entirety because Plaintiffs do not and cannot state any viable claim.  And because Plaintiffs cannot cure these deficiencies by amendment—as demonstrated by the fact that Plaintiffs amended their complaint but did not respond to any of the deficiencies identified by State Farm's first motion to dismiss—Plaintiffs' claims should be dismissed with prejudice.

California law prohibits insurers from treating applicants for life insurance differently based on the applicants' race.  *See* Cal. Ins. Code § 10140(a).  Consistent with that prohibition, California law forbids insurers from gathering data from life insurance applicants that would identify an applicant's race.  *Id.* § 10141.  Plaintiffs do not allege that State Farm failed to follow this prohibition on gathering race data from life insurance applicants, nor do they allege that State Farm knows the race of life insurance applicants or policy holders.  And Plaintiffs do *not* allege that State Farm actually discriminates based on race when setting life insurance premiums.  Quite the opposite.  The complaint alleges that State Farm should have ascertained the race of its life insurance applicants, and then used each applicant's race when evaluating their health risks—in other words, Plaintiffs demand that State Farm consider applicants' race in the life insurance underwriting process, in violation of California law.

More specifically, Plaintiffs claim that State Farm should consider a life insurance applicant's race when evaluating kidney function.  According to Plaintiffs, State Farm evaluates the kidney function of life insurance applicants using a race-neutral medical formula developed by the Mayo Clinic—a formula that evaluates a patient's "glomerular filtration rate" or "eGFR."  Dkt. 32 ("Compl.") ¶¶ 22–29.  A higher eGFR score suggests a healthier kidney function.  *See id.* ¶¶ 21, 23.  Plaintiffs allege that applying a race-

neutral formula to calculate eGFR results in an underestimate of the kidney health of African-Americans, allegedly causing Plaintiffs—and a putative class of African-American State Farm life insurance customers in California—to be charged higher life insurance premiums because they would be perceived as being higher risk. *Id.* ¶¶ 21–24, 35. Plaintiffs allege that State Farm *should* have adjusted their eGFR scores based on their race—giving African-American applicants a different score than the race-neutral formula—and claim State Farm is liable for *not* using race-adjusted eGFR scores. Plaintiffs further assert that State Farm's decision not to use race-adjusted eGFR scores supports causes of action for (1) violation of California's Unruh Act, (2) negligence, and (3) violation of section 10140 of the California Insurance Code, as well as (4) a claim under California's Unfair Competition Law (the "UCL"). Plaintiffs' claims are legally barred and insufficiently alleged.

  **Plaintiffs Cannot Demand That State Farm Violate California Law.** Plaintiffs' entire suit rests on the premise that State Farm was *required* to use race when determining life insurance premiums—and that it is somehow liable for *not* using race in its underwriting process. But the California Insurance Code strictly prohibits using race in the underwriting process—or even gathering data to determine the race of life insurance applicants. Cal. Ins. Code §§ 10140(a), 10141. Plaintiffs cannot bring a lawsuit premised on the allegation that State Farm should have done something that is a violation of California law.

  **Using a Race-Neutral Formula Does Not Violate the Unruh Act.** The Unruh Act prohibits "*intentional* acts of discrimination." *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 853 (2005). Plaintiffs do not allege that State Farm intentionally discriminated against anyone based on their race—rather, their complaint is that State Farm *avoids* using race to calculate life insurance premiums. For that reason alone, their Unruh Act claim fails.

  Plaintiffs cannot save their Unruh Act claim by casting it as a "disparate impact" claim—i.e., by alleging that State Farm's use of a race-neutral eGFR formula has a

*disparate impact* on African-Americans, who purportedly would have higher eGFR scores if their scores were adjusted for their race. As the California Supreme Court has held, a "disparate impact analysis or test does not apply to Unruh Act claims." *Id.* at 854. The Unruh Act is concerned with intentional discrimination, not the alleged disparate impact of a race-neutral policy. Because Plaintiffs do not (and cannot) allege that State Farm engaged in intentional discrimination, their Unruh Act claims fail.

***The Negligence Claim Fails.*** Plaintiffs allege that State Farm "negligently" calculated their life insurance premiums, and claim that their premiums should be lower. But life insurance premiums are governed by life insurance *contracts*—not common law *tort* duties—and policyholders cannot circumvent their insurance contracts by demanding better premiums through a tort suit. Under California's economic loss rule, Plaintiffs are barred from using a tort claim to recover purported economic losses arising from their contractually determined insurance premiums. *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022).

Plaintiffs' negligence claim fails for the additional reason that California does not require insurers to act with a particular duty of care when setting life insurance premiums. No California court has held that life insurers can be liable for "negligence" when a policyholder complains that the premiums they pay are too high, and this Court should not be the first.

Further, *even if* a duty of care applied here (none does), Plaintiffs have not alleged that any purported "negligence" caused their harm. Plaintiffs' negligence claim rests on a conclusory assertion that the Mayo Clinic's eGFR formula—developed by one of the country's premier medical institutions—is somehow deficient and that State Farm breached its purported duty to its life insurance applicants by using it to calculate eGFR. But Plaintiffs do not allege that any of the purported defects in the Mayo Clinic's formula were the cause of their harm. Instead, they allege that their harm was caused by the fact that "State Farm does not consider race when determining eGFR." Compl. ¶ 22.

Because Plaintiffs do not connect State Farm's "negligence" in using the Mayo Clinic formula to their alleged injuries, their negligence claim fails for that reason as well.

***The Race-Neutral eGFR Formula Does Not Violate the California Insurance Code.*** California Insurance Code section 10140 prohibits insurers from using race as a "condition" or "risk" factor to raise insurance rates. But Plaintiffs do not allege that State Farm used race in its rate-setting process at all—to the contrary, they complain about State Farm's adherence to the California Insurance Code through the use of a *race-neutral* formula for evaluating kidney function. The Insurance Code does not prohibit the use of race-neutral policies: rather, like the Unruh Act, it prohibits *intentional discrimination*. Because Plaintiffs do not allege that State Farm intentionally discriminated against them (or anyone else), Plaintiffs claim under Insurance Code section 10140 fails.

***The UCL "Unlawful" Claim Depends Entirely on Plaintiffs' Other Claims.*** Plaintiffs' UCL claim is completely dependent on their other claims. They admit that their UCL claim rests solely on the "unlawful" prong of the UCL, and Plaintiffs cannot assert an "unlawful" claim without showing State Farm violated some *other* statute or "'borrowed' law." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 841 (N.D. Cal. 2020) (quoting *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012)). Because Plaintiffs' other claims fail, their UCL claim fails as well.

## II.  SUMMARY OF ALLEGATIONS

The complaint alleges State Farm did *not* take race into account when assessing the kidney health of life insurance applicants—a practice that, according to Plaintiffs, resulted in Plaintiffs paying higher life insurance premiums. *See* Compl. ¶¶ 19–23.

Plaintiffs are two State Farm life insurance policyholders, one of whom is also a State Farm agent in Los Angeles. *Id.* ¶¶ 19–20, 23. Plaintiffs do not state which State Farm company they purchased life insurance from—and in fact, they purchased their life insurance policies from State Farm Life Insurance Company, not the other two Defendants. *See* Dkt. 4 ¶¶ 4–5; *see also* Dkt. 1 ¶¶ 14–15 (explaining that State Farm

1    General Insurance Company has never sold life insurance and is not licensed in
2    California nor authorized by its articles of incorporation to do so).  Nevertheless, solely
3    for purposes of this motion to dismiss, Defendants accept as true Plaintiffs' allegation
4    that all three Defendants sold life insurance to them.[1]

5        Plaintiffs allege that State Farm evaluates the kidney function of life insurance
6    applicants using an eGFR score that is calculated through a race-neutral formula
7    developed by the Mayo Clinic.  *Id.* ¶¶ 2, 25.  According to Plaintiffs, an eGFR score
8    *below* 60 is indicative of a higher risk for kidney disease, while a score *at or above* 60
9    is considered healthy.  *Id.* ¶ 21.  Plaintiffs, who are African-American, allege that State
10   Farm assessed their eGFR scores as *below* 60, and claim that this resulted in a $4,000
11   annual increase in their life insurance premiums.  *Id.* ¶¶ 21, 23.  Plaintiffs allege that
12   their eGFR score should have been adjusted to account for their race—and that if it was,
13   their "African-American number" would have been *above* 60.  *Id.* ¶ 23; *see also id.* ¶ 21.
14   Plaintiff Stevens alleges that his doctor told him that his unadjusted eGFR score is 54,
15   but that if his score is adjusted for his race, it increases to 63.  *Id.* ¶ 21.  Similarly,
16   Plaintiff Jackson alleges that his  unadjusted score is "*below* 60," but his race-adjusted
17   "African American-number" is "actually above 60."  *Id.* ¶ 23.  Plaintiffs allege that they
18   complained about the use of a race-neutral eGFR formula to State Farm, which
19   responded that "State Farm does not consider race when determining eGFR."  *Id.* ¶ 22.
20   And Plaintiffs say that if State Farm *had* considered race, their premiums would be
21   $4,000 lower per year.  *See id.* ¶¶ 20, 23.

22       Plaintiffs further complain that the eGFR formula State Farm allegedly uses, a
23   formula that was developed in 2004 by the Mayo Clinic, was derived from a "study"
24   that was "not representative of the general population."  *Id.* ¶¶ 25–26.  They allege that

---

[1]   Plaintiffs' complaint names State Farm Mutual Automobile Insurance Company (erroneously sued as State Farm Mutual, Inc.), State Farm General Insurance Company (erroneously sued as State Farm General Incorporated), and, now, State Farm Life Insurance Company as Defendants (collectively referred to as "State Farm" in this brief).

Gibson, Dunn & Crutcher LLP

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

"the Mayo equation is not routinely used in clinical practice" and "not even recommended in the medical community." *Id.* ¶ 28.  And they allege that State Farm "failed to consider using equations that were widely recommended in the medical field," which "was to the detriment of African-American life insurance policy holders." *Id.* ¶ 29.

In addition to suing on their own behalf, Plaintiffs seek to represent a class of African-American life insurance policy holders in California.  They define the class as:

> Every State Farm African-American life insurance policy holder who is paying a higher premium for having an eGFR greater than 60, but rated for having an eGFR lower than 60 from June 27, 2018 to present.

*Id.* ¶ 35.

As noted, Plaintiffs assert causes of action for (1) violation of California Business and Professions Code section 17200 (California's Unfair Competition Law), (2) violation of the Unruh Civil Rights Act, (3) negligence, and (4) violation of Insurance Code section 10140.  *Id.* ¶¶ 59–91.  In connection with their UCL cause of action, Plaintiffs say that State Farm's refusal "to consider race in determining a person's eGFR score" has resulted in State Farm violating the Unruh Act, and thus State Farm has also violated the "unlawful" prong of the UCL.  *Id.* ¶¶ 63–65.  For the Unruh Act claim itself, they allege State Farm violated the Act because "African-American insurance policy holders" allegedly pay "a higher premium for eGFR rates."  *Id.* ¶ 69.  And in support of the negligence and Insurance Code claims, they allege that the Mayo Clinic eGFR formula is not routinely used and that State Farm's use of the formula has been "to the detriment of African-American life insurance policy holders."  *Id.* ¶¶ 79, 89.  Plaintiffs demand various relief, including "[r]estitution," attorneys' fees, and "public injunctive relief prohibiting Defendant's discriminatory practices."  *Id.* at 20.

### III.  PROCEDURAL HISTORY

Plaintiffs first filed their complaint in Los Angeles Superior Court, against two Defendants—State Farm Mutual and State Farm General.  *See* Dkt. 6, Ex. A.  State Farm

1    then removed the case to this Court (Dkt. 1), and moved to dismiss Plaintiffs' complaint

2    on November 14, 2022 (Dkt. 30).  Rather than file an opposition to State Farm's motion,

3    Plaintiffs filed a notice of intent to amend under Fed. R. Civ. P. 15(a)(1), and Plaintiffs

4    filed their First Amended Complaint on December 5, 2022.  Dkt. 32.

5         Plaintiffs' amended complaint is almost identical to their original complaint.  *See*

6    Declaration of Bradley J. Hamburger ¶ 2, Ex. A.  The only changes Plaintiffs have made

7    are: (1) adding State Farm Life Insurance as a Defendant (after State Farm pointed out

8    that the other two Defendants did not sell life insurance to Plaintiffs), *see id.* at 7 ¶ 12;

9    (2) adding a single sentence to the UCL count, which says "Plaintiffs allege that

10   Defendants knew that they were not using the most equitable eGFR formula, and knew

11   that the Mayo formula [would] result in a direct negative effect on Plaintiffs and those

12   similarly situated," *id.* at 18 ¶ 64; and (3) adding a sentence to the negligence count

13   stating that "Plaintiffs allege that Defendants were negligent in researching which

14   formula was the most fair and equitable."  Aside from adding a Defendant, Plaintiffs'

15   new allegations merely restate allegations that were already in the original complaint—

16   such as the prior complaint's allegations (repeated in the new complaint) that State Farm

17   "knew or should have known" of "limitations" with the Mayo Clinic formula and "knew

18   and / or should have known" that the formula allegedly did not have "the most accurate

19   results across a broad population."  *Id.* at 11 ¶¶ 26, 29.

20                          **IV.  LEGAL STANDARD**

21        A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient

22   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

23   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

24   U.S. 544, 570 (2007)).

25        The Court's first task on a motion to dismiss is to separate the complaint's legal

26   conclusions—which are disregarded—from its factual allegations.  *Iqbal*, 556 U.S. at

27   678–79.  Once that is done, the remaining factual allegations must "raise a right to relief

28   above the speculative level."  *Twombly*, 550 U.S. at 555.  If the complaint pleads facts

that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).   In other words, when there is an "'obvious alternative explanation' for [the] defendant's behavior," the plaintiff has not plausibly alleged a violation of the law. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 682).   And the plaintiff's claims must be reasonably supported by the alleged facts—the Court need not and should not accept as true "unwarranted deductions of fact, or unreasonable inferences." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.4 (9th Cir. 2012) (quotations omitted).

The purpose of the two-step plausibility analysis is to ensure that the "factual allegations that are taken as true . . . plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).   Claims also may be dismissed based on a dispositive issue of law. *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015).

## V.   ARGUMENT

Plaintiffs allege that State Farm's decision to *comply* with California law and *not* consider a life insurance applicant's race is illegal and somehow constitutes intentional race discrimination.   This theory of liability makes no sense—it would require State Farm to violate the clear mandates of the California Insurance Code to avoid liability to Plaintiffs.   Plaintiffs' Unruh Act and Insurance Code claims also fail because those statutes prohibit intentional race discrimination, and Plaintiffs do not allege that State Farm discriminated against anyone based on their race.   To the contrary, their core allegation is that State Farm does *not* consider race when underwriting life insurance. And Plaintiffs' negligence claim fails because they seek only economic losses not recoverable under a negligence theory, and because the act of setting insurance premiums is not governed by common law tort duties.   Finally, the UCL claim just piggy-backs on the other causes of action, and fails because those other claims fail.

## A.    Plaintiffs Cannot Demand That State Farm Violate the Law

Plaintiffs allege that they were harmed because State Farm evaluated their kidney health using a race-neutral eGFR formula—and they say State Farm *should* have used eGFR numbers that were adjusted based on their race.  Compl. ¶¶ 21, 23 (State Farm should have used an "African-American number" for Plaintiffs).  Plaintiffs' suit is thus premised on the claim that State Farm was "required" to consider race when evaluating life insurance applications.  *See, e.g.*, *id.* ¶ 63 (alleging State Farm was "required . . . to consider race in determining a person's eGFR score").  But California law strictly prohibits *any* consideration of race in the evaluation of life insurance applications—in effect, Plaintiffs' suit rests on allegations that State Farm should have *broken* California law.  This makes no sense and cannot form the basis of a legal cause of action.  State Farm cannot be liable under any theory for doing exactly what the California Insurance Code mandates.

The California Insurance Code requires life insurers to treat all applicants "alike" regardless of their race, and to evaluate life insurance applications using race-neutral criteria.  *See* Cal. Ins. Code § 10140(a) (mandating that life insurers evaluate applications using "reasons applicable alike to persons of every race"); *infra* pp. 18–19  (explaining California Supreme Court holding that analogous language mandates race neutrality and prohibits any consideration of race).  The California Insurance Code bars even the *collection* of data identifying a life insurance applicant's race—making the consideration of race in the life insurance underwriting process both prohibited and impossible.  Cal. Ins. Code § 10141 ("No application for insurance or insurance investigation report . . . shall carry any identification, or any requirement therefor, of the applicant's race . . . .").

The entire premise of Plaintiffs' claims is that State Farm should have violated California's Insurance Code *twice*—first by gathering data showing Plaintiffs' race, and then by using that race data to adjust their eGFR scores.  But State Farm cannot be held liable for following the California Insurance Code's prohibition on collecting or using

race data in connection with the underwriting of life insurance.  Plaintiffs' claim that State Farm somehow violated the Insurance Code fails because it requires State Farm to do exactly the opposite of what they demand.  Cal. Ins. Code §§ 10140(a), 10141; *infra* pp. 18–19 (Insurance Code requires life insurers not to consider race).  And all of Plaintiffs' other claims fail because they are barred by the Insurance Code.  The requirements of the Code—which the California legislature enacted for the *specific purpose* of governing the insurance industry—govern over other laws of *general* application.  *See Kirsh v. State Farm Mut. Auto. Ins. Co.*, 284 Cal. Rptr. 260, 265 (1991) (unpublished) ("Insurance Code section 10140, a special statute which applies to discrimination in the issuance and pricing of life or disability insurance, prevails over the Unruh Act, a general antidiscrimination statute[.]"); *see also People v. Superior Ct. (Ruiz)*, 187 Cal. App. 3d 686, 692 (1986) ("A basic rule of statutory construction is that a special statute dealing expressly with a particular subject controls over a more general statute covering the same subject matter."); 15A C.J.S. Common Law § 17 ("the common law may be impliedly repealed by a statute that is inconsistent with it[.]").  So even if the fact that State Farm does not consider race in life insurance underwriting might otherwise violate the Unruh Act, California negligence law, or the UCL (it does not, as explained below), those *general* laws would have to give way to the *specific* provisions of the Insurance Code—which *prohibit* life insurers from considering race during the underwriting process.  *See Kirsh*, 284 Cal. Rptr. at 265; Cal. Ins. Code §§ 10140(a), 10141.  Using a method for calculating eGFR that would treat people differently based on their race, as Plaintiffs assert State Farm should have done, would run afoul of what California law requires.

Plaintiffs' claims are also barred by the similar but separate principle that courts should not enforce or require unlawful conduct.  *See, e.g.*, *Bassidji v. Goe*, 413 F.3d 928, 937–38 (9th Cir. 2005) (explaining that both federal and California law prohibit "enforcing the precise conduct made unlawful . . . in contravention of [a] legislative purpose").  This principle, which is frequently invoked when prohibiting the

1   enforcement of illegal contracts, prohibits courts from "order[ing] a legal violation." *Id.*

2   at 939 (prohibiting contract suit that would have effectively required "provid[ing] funds

3   to the Iranian economy, paying for goods in Iran," in violation of federal sanctions

4   against Iran).   Here, Plaintiffs' complaint demands that State Farm be forced by this

5   Court—both through the deterrent effect of monetary damages, and through affirmative

6   equitable relief—to use race-adjusted, "African-American [eGFR] number[s]" when

7   underwriting life insurance contracts.   Compl. ¶ 23; *id.* at 20 (demanding both

8   "damages" and "equitable and injunctive relief").   This would force the Court to "order

9   a legal violation"—by requiring State Farm to collect race data from life insurance

10  policyholders and use that data to adjust eGFR.  *Bassidji*, 413 F.3d at 930.

11         The California Legislature has specifically mandated that insurers are not to

12  consider race when issuing life insurance policies—and State Farm has indisputably

13  complied with that mandate.    Plaintiffs cannot second-guess the Legislature's

14  determination to prohibit the use of race in the underwriting of life insurance, and they

15  cannot overwrite California's Insurance Code with a tort suit.  And State Farm cannot

16  be liable for complying with the Insurance Code.  Plaintiffs' suit should be dismissed in

17  its entirety because it is premised on faulting State Farm for doing what the law requires.

18  Further, because Plaintiffs' own allegations demonstrate that their claims are premised

19  on demanding that State Farm violate California law—and because Plaintiffs have not

20  fixed this defect, even after having an opportunity to amend—dismissal should be with

21  prejudice.  *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008)

22  (dismissal without leave to amend is justified when plaintiff's own allegations

23  demonstrate that the claim is not viable); *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d

24  733, 742 (9th Cir. 2008) (leave to amend is properly "denied for repeated failure to cure

25  deficiencies by previous amendment").

26  **B.    Plaintiffs Have Failed to Plead a Viable Unruh Act Claim**

27        **1.    Plaintiffs Do Not Allege Any Intentional Discrimination**

28        Plaintiffs do not allege that State Farm intentionally discriminated against them

1    or anyone else.  They do not claim that State Farm singled out African-American

2    applicants for higher rates, or used race when calculating insurance premiums.  To the

3    contrary, they repeatedly allege that "State Farm does *not* consider race" when

4    evaluating applicants' health and calculating their rates.  Compl. ¶ 22 (emphasis added);

5    *id.* ¶ 63 (criticizing State Farm because it does not "consider race in determining a

6    person's eGFR score").  Such allegations preclude any Unruh Act claim.  The Act

7    requires proof of *intentional discrimination* based on race, which is exactly what

8    Plaintiffs allege State Farm does *not* do.

9        "Unless an Unruh Act claim is based on an ADA violation," which is not the case

10   here, "the act requires a claimant to prove 'intentional discrimination.'"  *Martinez v.*

11   *Cot'n Wash, Inc.*, 81 Cal. App. 5th 1026, 1036 (2022) (quoting *Koebke*, 36 Cal. 4th at

12   854).  "Thus, absent an ADA violation, the Unruh Act requires allegations supporting

13   'willful, affirmative misconduct' with the specific intent 'to accomplish discrimination

14   on the basis of [a protected trait].'"  *Id.* (quoting *Koebke*, 36 Cal. 4th at 853).

15       Plaintiffs do not (and cannot) allege that State Farm acted "with the specific intent

16   to accomplish discrimination."  *Martinez*, 81 Cal. App. 5th at 1036 (quotation marks and

17   citation omitted).  The complaint is devoid of *any* indicia of intentional discrimination.

18   Far from suggesting that State Farm used insurance applicants' race to discriminate, the

19   entire complaint focuses on State Farm's *refusal* to consider race.  Compl. ¶¶ 23, 63.

20       Because Plaintiffs' own allegations disprove a claim of intentional discrimination

21   their Unruh Act claim should be dismissed, with prejudice.

22       **2.    Plaintiffs Cannot Bring a Disparate Impact Claim**

23       Plaintiffs' Unruh Act claim also cannot be based on a disparate impact theory—

24   i.e., that State Farm's use of a race-neutral formula to calculate an eGFR score

25   disparately impacts African-American policyholders.  Even if the complaint asserted

26   such a theory (which it does not), there is no "disparate impact" cause of action under

27   the Unruh Act. On the contrary, the California Supreme Court has made clear that "[a]

28   disparate impact analysis or test does not apply to Unruh Act claims."  *Koebke*, 36 Cal.

4th at 854. Following this precedent, California courts have confirmed that the Act "contemplates 'willful, affirmative misconduct on the part of those who violate the Act' and that a plaintiff must therefore allege, and show, more than the disparate impact of a facially neutral policy." *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) (quoting *Koebke*, 36 Cal. 4th at 853).

Under this framework, even if Plaintiffs' complaint could be read as alleging that State Farm's facially neutral policy—i.e., its use of the Mayo Clinic's formula to calculate eGFR scores that are not adjusted by race—disparately impacts African-American policyholders, that would not state an Unruh Act violation. *See* Compl. ¶¶ 22–23 (alleging Plaintiffs were harmed because "State Farm does not consider race when determining eGFR," and that they should have received a race-adjusted "African-American number"). An allegation of "the disparate impact of a facially neutral policy" is categorically insufficient to state a claim, and Plaintiffs' Unruh Act claim fails. *Cable News Network*, 742 F.3d at 425.

## C. Plaintiffs' Negligence Claim Fails

### 1. The Economic Loss Rule Bars Plaintiffs' Attempt to Use a Negligence Claim to Sue Over Insurance Premiums

The premise of Plaintiffs' negligence claim is that the Mayo Clinic eGFR formula is "not the most accurate," and that State Farm should have used some different formula to calculate the insurance premiums for Plaintiffs. Compl. ¶¶ 80–82. But California law precludes Plaintiffs from using a negligence claim to challenge their contractually determined insurance premiums.

Under California's "economic loss rule," a plaintiff cannot bring a tort action based on "'purely economic losses,' meaning financial harm unaccompanied by physical or property damage." *Sheen*, 12 Cal. 5th at 922 (quoting *S. California Gas Leak Cases*, 7 Cal. 5th 391, 400 (2019)). This rule applies when a plaintiff and defendant have contracted with each other, and is meant to prevent a plaintiff from effectively overwriting the parties' contract by suing in tort (rather than bringing a breach-of-

contract claim): "if a disappointed buyer has the option of abandoning the contract and suing in tort, the significance of the contract is diminished and the doctrines that protect the integrity of the contractual process are reduced in importance." *Id.* at 923 (quoting Farnsworth, *The Economic Loss Rule*, 50 Val. U. L. Rev. 545, 553–54 (2016)).

With one exception—not applicable here—the economic loss rule generally bars tort claims in economic disputes between policyholders (like Plaintiffs) and insurers (like State Farm). A policyholder can sue his insurer in tort *if* the insurer "in bad faith . . . fails to properly settle or pay a claim" brought by a third party against the policyholder. *Jonathan Neil & Assoc., Inc. v. Jones*, 33 Cal. 4th 917, 938 (2004); *see also Bally v. State Farm Life Ins. Co.*, 536 F. Supp. 3d 495, 512–13 (N.D. Cal. 2021) ("[I]n California, breaches of insurance contracts are typically only found to have a tortious element when the implied covenant of good faith and fair dealing is breached."). Tort suits are allowed between policyholders and insurers in this narrow circumstance because the purpose of an insurance contract is to insure policyholders against covered claims—so a suit forcing an insurer to honor its coverage promise is "a tool to effectuate the purpose of insurance contracts." *Sheen*, 12 Cal. 5th at 932. But as the California Supreme Court has expressly held, a policyholder's complaint that it paid "an excessive premium"—as Plaintiffs do here—does not trigger this narrow exception to the economic loss rule—so a claim that an insurer "billed an insured for an excessive premium" sounds only in contract, not tort. *Jonathan Neil*, 33 Cal. 4th at 938–39 (economic loss rule barred plaintiffs' tort claim that they were retroactively billed for insurance premiums they did not owe).

The economic loss rule bars Plaintiffs' negligence claim here. Plaintiffs allege that they contracted with State Farm for life insurance and have paid premiums pursuant to their contracts with State Farm. Compl. ¶ 9 (Plaintiffs are "life insurance policy holders of Defendants who utilized Defendants services in purchasing life insurance policies"); *id.* ¶¶ 20–23. And Plaintiffs' alleged losses are only economic. They allege that they were charged higher insurance premiums than they think they should have been

charged. *Id.* ¶ 82. But although they complain that they paid "an excessive premium," their premiums are governed by their contracts—and they cannot circumvent those contracts through a tort claim. *Jonathan Neil*, 33 Cal. 4th at 938; *Sheen*, 12 Cal. 5th at 925 ("[W]hen two parties make a contract, . . . it is appropriate to enforce only such obligations as each party voluntarily assumed, and to give him only such benefits as he expected to receive; this is the function of contract law."). Plaintiffs' negligence claim—seeking to recover economic losses arising from their contractual relationship with State Farm—should be dismissed with prejudice under the economic loss rule.

> **2.    There Is No Tort Duty of Care Governing the Calculation of Insurance Premiums**

Even setting the economic loss rule aside, Plaintiffs' negligence claim fails because an insurer does not owe policyholders a tort duty of care when calculating insurance premiums. And recognizing a tort duty in this context would be absurd—it would lead to never-ending litigation over whether premiums are "reasonable" or "reasonably set"—a question that should be resolved by marketplace competition and regulatory oversight, not jury trials.

In order to bring a negligence claim, a plaintiff must show that the defendant owed the plaintiff a duty to act reasonably. *See Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 391 (1992) ("The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion."). "Whether this essential prerequisite to a negligence cause of action has been satisfied in a particular case is a question of law to be resolved by the court." *Id.*

No California case has imposed a tort duty of care on an insurer's calculation of insurance premiums—in fact, the California caselaw *forecloses* the existence of any such duty. California courts have held that "an insurer has no special common law duties as to a purchaser of insurance concerning the calculation of premiums, whether the purchaser is a potential insured or an insured." *Levine v. Blue Shield of California*, 189

Cal. App. 4th 1117, 1132 (2010). In *Levine*, the plaintiffs, Blue Shield policyholders, alleged that Blue Shield owed them a duty of care when "negotiating the price of an insurance contract," and that Blue Shield had negligently violated this duty by failing to disclose that plaintiffs could obtain cheaper coverage without losing any benefits. *Id.* at 1129. The California Court of Appeal rejected the plaintiff's arguments for such a duty, reasoning that "a person's initial decision to obtain insurance and an insurer's decision to offer coverage generally should be governed by traditional standards of freedom to contract"—not by tort duties. *Id.*

*Levine*'s holding applies fully here. Plaintiffs claim that State Farm owes them a common-law tort duty "concerning the calculation of premiums," and that State Farm somehow breached this duty by using the Mayo clinic formula. *Id.* at 1132; Compl. ¶¶ 80–82. But as *Levine* explained, there is no such duty; an insurer's decision to offer insurance at a particular rate is not governed by negligence principles.

Even if *Levine* did not bar Plaintiffs' claim on its own, another recent California Court of Appeal ruling—issued just a year ago—confirms that imposing a duty requiring insurance payments to be "reasonable" would be unworkable. *See Long Beach Mem'l Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 71 Cal. App. 5th 323 (2021). In *Long Beach Memorial*, the plaintiffs—a group of hospitals—alleged that health insurers owed a common-law duty to reimburse hospitals for the "reasonable" value of emergency services that they provided to the insurers' policyholders. *See id.* at 337. The Court of Appeal disagreed, explaining that imposing such a duty would not solve any pressing problem because hospitals already have other means of suing for relief if an insurer fails to reimburse for emergency services. *Id.* The court also noted that "[t]he social costs of recognizing a new tort duty, . . . are staggering," *id.* at 337, and offered several additional considerations that carry over to the suggested duty in this case.

*First*, the court noted that creating a tort duty would effectively override the contracts and regulations governing the relationship between hospitals and insurance companies. *Long Beach Memorial*, 71 Cal. App. 5th at 338 (explaining that "economic

1  relationships are typically governed by contracts or by comprehensive government
2  regulation, and . . . tort liability creates incentives that alter the conduct of market
3  participants and thus runs the risk of significantly reordering these relationships and the
4  economic markets in which they are formed"). *Second*, "a negligence-based tort"
5  requiring insurers to pay a "reasonable" amount "would be both useless and impossible
6  to comply with." *Id.* at 339. The tort would be "useless" because there are other
7  remedies available, and it would be "impossible to comply with" because it would be
8  effectively impossible for insurers to foresee what a "jury" would find to be a
9  "reasonable" rate. *Id. Third*, if insurers owed such a duty, there would be "a powerful
10 incentive for a hospital or other medical provider to bring such a tort claim in every
11 case." *Id.* Not only would defendants be hard pressed to avoid a jury trial by showing
12 their rates were "reasonable" as a matter of law, but "health plans always act to varying
13 extents with a profit motive," and plaintiffs could try to leverage the insurer's pursuit of
14 profit to argue "for punitive damages in every case." *Id.* For these reasons, the court
15 rejected as a matter of law the plaintiffs' claim that insurers owe a duty to make
16 "reasonable" reimbursements. *Id.* at 341–42.

17      The reasoning of *Long Beach Memorial* fully applies here. Imposing a tort duty
18 requiring insurers to use a "reasonable" process to set premiums would make no sense
19 and would not solve any problem. *See* 71 Cal. App. 5th at 337. Policyholders already
20 can sue for breach of contract if their insurer actually overcharges beyond what is
21 allowed by the insurance contract—and if a policyholder is unhappy with the rate, that
22 person can seek out another insurer in the marketplace. Further, imposing a tort duty
23 would "alter the conduct of market participants and thus runs the risk of significantly
24 reordering these relationships and the economic markets in which they are formed." *Id.*
25 at 338. Insurance is heavily regulated in California by both statue and regulation, and
26 the relationship between insurers and policyholders is governed by those laws and the
27 insurance contract. Imposing a free-floating duty to set premiums "reasonably" would
28 upend this relationship and increase the cost of insuring Californians. And as in *Long*

Gibson, Dunn & Crutcher LLP

17

1    *Beach Memorial*, "a negligence-based tort would be both useless and impossible to

2    comply with." *Id.* at 339.  The tort would be useless because it would not redress any

3    real problem, and it would be impossible for insurers to know in advance what a jury

4    might consider to be a "reasonable" process for setting a rate.  Creating such a tort duty

5    would be an invitation for every policyholder to sue their insured—or at least for

6    plaintiffs to bring class actions on behalf of every policyholder—with the hope that a

7    jury will punish purportedly "venal" insurance companies.  *Id.* at 340.

8         In short, "a person's initial decision to obtain insurance and an insurer's decision

9    to offer coverage generally should be governed by traditional standards of freedom to

10   contract."  *Levine*, 189 Cal. App. 4th at 1129.  There is no free-floating tort duty

11   governing the setting and calculation of insurance premiums, and Plaintiffs' negligence

12   claim should be dismissed with prejudice for that reason as well.

13        **3.    Plaintiffs Have Not Alleged Any Negligence Caused Them Harm**

14        Plaintiffs' negligence claim also fails because they allege no facts showing that

15   the purported "negligence" they based their claim on—the use of the Mayo Clinic

16   formula—actually caused them harm.

17        According to Plaintiffs, they paid higher insurance premiums because State Farm

18   did not adjust their eGFR scores based on their race.  Compl. ¶¶ 21–23.  Both Plaintiffs

19   allege that their race-neutral eGFR scores are *below* 60, but that their race-adjusted

20   "African-American number" would be *above* 60.  *Id.* ¶ 23.  And they allege that if their

21   race-adjusted score had been used to calculate their premiums, they would not have been

22   harmed.  *See id.*  Although the complaint goes on to allege that the Mayo Clinic formula

23   is not widely used, and vaguely claims that other formulas are superior (*see id.* ¶¶ 27–

24   30), they do not explain how State Farm's use of the Mayo Clinic formula caused them

25   harm.  Their harm, according to the complaint, is that "State Farm does not consider race

26   when determining eGFR."  *Id.* ¶ 22.  So Plaintiffs allege that State Farm was *negligent*

27   for using the Mayo Clinic formula, but allege that they were *harmed* by something

28   else—State Farm's refusal to adjust their eGFR scores based on their race.

Plaintiffs' negligence claim fails because they have not alleged (except in wholly conclusory fashion, *id.* ¶ 82) that the complained-of negligence—the use of the Mayo Clinic formula—caused their injuries. *See Bromme v. Pavitt*, 5 Cal. App. 4th 1487, 1498 (1992) (plaintiff must "prove the negligence was of itself sufficient to bring about that harm"); *see also Wilson*, 668 F.3d at 1147 (conclusory allegations are disregarded on a motion to dismiss). And they do not allege that State Farm's refusal to consider their race when calculating eGFR—the actual alleged cause of their harm—was negligent. Nor could they, given that California law requires State Farm *not* to consider a life insurance applicant's race. *See* Cal. Ins. Code §§ 10140(a); 10141; *supra* p. 8. The negligence claim should be dismissed with prejudice for this reason as well.

## D.     Plaintiffs Allege No Violation of Insurance Code Section 10140

Plaintiffs' claim under California Insurance Code section 10140 should also be dismissed. *See* Compl. ¶¶ 80–88. That provision prohibits racial discrimination in life insurance underwriting—but, as explained, the factual matter alleged in the complaint shows that State Farm has complied with section 10140 (and its companion statute, section 10141, which prohibits the collection of racial demographic data). *See supra* pp. 8–10. Further, even if Plaintiffs' complaint could be construed as alleging a disparate impact theory, section 10140, just like the Unruh Act, covers only intentional discrimination, not the alleged disparate impact of a race-neutral policy. Plaintiffs' Insurance Code claim fails.

There are no reported cases interpreting section 10140, but its plain language and legislative history makes clear that it mirrors the Unruh Act in barring only *intentional* discrimination. *See Goodman v. Lozano*, 47 Cal. 4th 1327, 1332 (2010) (California statutory interpretation begins with "scrutiniz[ing] the actual words of the statute, giving them a plain and commonsense meaning," and looking to "legislative history and background" to confirm that meaning). It begins by stating that "[n]o admitted insurer . . . shall fail or refuse to accept an application for that insurance, . . . under conditions less favorable to the insured than in other comparable cases, except for reasons

1    applicable alike to persons of every race . . . ."  Cal. Ins. Code § 10140(a).  It then states

2    that "[r]ace, . . . shall not, of itself, constitute a condition or risk for which a higher rate,

3    premium, or charge may be required of the insured for that insurance."  *Id.*

4         These provisions mirror the key language in the Unruh Act that forecloses

5    disparate impact theories.  Specifically, the statement that insurers may reject insurance

6    applications "for reasons applicable alike to persons of every race," Cal. Ins. Code

7    § 10140(a), mirrors the Unruh Act's statement that businesses may use standards that

8    are "applicable alike to persons of every . . . race," Cal. Civ. Code § 51(c).  As the

9    California Supreme Court has explained, this language necessarily precludes a disparate

10   impact claim—because "'[b]y its nature, an adverse impact claim challenges a standard

11   that is applicable alike to all such persons based on the premise that, notwithstanding its

12   universal applicability, its actual impact demands scrutiny.'"  *Koebke*, 36 Cal. 4th at 853

13   (quoting *Harris v. Cap. Growth Invs. XIV*, 52 Cal. 3d 1142, 1172–73 (1991)).

14        Similarly, the statement that "[r]ace, . . . shall not, of itself, constitute a condition

15   or risk for which a higher rate, premium, or charge may be required" speaks to

16   *intentional* discrimination—the insurer violates the provision if it chooses to designate

17   race as a "condition" that "requir[es]" higher premiums.  Cal. Ins. Code § 10140(a).  The

18   statute's focus on intentional consideration of race is confirmed by the legislative

19   history; the Legislative Counsel's Digest accompanying this statutory language states

20   that it "[p]rohibits *consideration solely* of race . . . as [a] condition or risk for higher

21   insurance charge[s]."  Legislative Counsel's Digest, California Assembly Bill 1266

22   (March 26, 1969) (emphasis added), *available at* https://tinyurl.com/mw4df7kc; *see also*

23   *Harris*, 52 Cal. 3d at 1157 n.6 (California courts "ascribe[] to the Legislature the

24   intentions expressed in the Legislative's Counsel's Digest").

25        As explained, the complaint does not allege that State Farm considered race when

26   setting insurance premiums.  Quite the opposite, as it alleges that State Farm uses a race-

27   neutral formula to calculate eGFR scores to estimate kidney function.  Compl. ¶ 23

28   (complaining that "State Farm does not consider race when determining eGFR"); *supra*

pp. 8–12.  Because Plaintiffs have not alleged that State Farm intentionally discriminates based on race, their section 10140 claim should be dismissed with prejudice.

**E.      The Follow-On UCL Claim Fails**

Finally, Plaintiffs' UCL claim is completely dependent on their other claims—and because the other claims fail, the UCL claim must as well.

Plaintiffs' sole theory of UCL liability rests on the UCL's "unlawful" prong (Compl. ¶¶ 62–66), which requires an allegation that State Farm violated some *other* statute or "'borrowed' law." *Google*, 457 F. Supp. 3d at 841 (quoting *Davis*, 691 F.3d at 1168).  As explained, Plaintiffs have not alleged facts showing that State Farm violated some other statute. *Supra* pp. 8–12.  Plaintiffs have thus not alleged a violation of the UCL's "unlawful" prong. *See Google*, 457 F. Supp. 3d at 841 (because underlying statutory claims failed, claim under UCL's unlawful prong failed as well).

**VI.   CONCLUSION**

State Farm's use of a race-neutral formula for eGFR scores in connection with the underwriting of life insurance policies is not a ground for liability to support any of Plaintiffs' claims.  Plaintiffs' action should be dismissed in its entirety with prejudice.

Dated:  December 19, 2022

GIBSON, DUNN & CRUTCHER LLP

By:    */s/ Bradley J. Hamburger*
        Bradley J. Hamburger

Attorneys for Defendants State Farm Mutual Automobile Insurance Company, State Farm General Insurance Company, and State Farm Life Insurance Company