GIBSON, DUNN & CRUTCHER LLP
MARCELLUS A. MCRAE, SBN 140308
  Mmcrae@gibsondunn.com
HEATHER L. RICHARDSON, SBN 246517
  HRichardson@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  BHamburger@gibsondunn.com
TIAUNIA HENRY, SBN 254323
  THenry@gibsondunn.com
DANIEL NOWICKI, SBN 304716
  DNowicki@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071
Telephone:   213.229.7000
Facsimile:   213.229.7520

Attorneys for Defendants State Farm Mutual
Automobile Insurance Company (erroneously
sued as State Farm Mutual, Inc.), State Farm
General Insurance Company (erroneously sued as
State Farm General Incorporated), and State
Farm Life Insurance Company

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEL STEVENS and LADALE JACKSON, individually and on behalf of all similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>STATE FARM MUTUAL, INC.; STATE FARM GENERAL INCORPORATED; STATE FARM LIFE INSURANCE COMPANY; and DOES 1 through 50, inclusive,<br><br>                    Defendants. | CASE NO. 2:22-CV-06362 FLA (MAAx)<br><br>**REPLY MEMORANDUM OF DEFENDANTS STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM GENERAL INSURANCE COMPANY, AND STATE FARM LIFE INSURANCE COMPANY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>Hearing Date:   January 20, 2023<br><br>Action Filed:   July 6, 2022 |

Gibson, Dunn &
Crutcher LLP

---

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

1

**TABLE OF CONTENTS**

2

Page

3

I.      INTRODUCTION .................................................................................. 1

4

II.     LEGAL STANDARD .......................................................................... 4

5

III.    ARGUMENT........................................................................................ 5

6

        A.     Plaintiffs Cannot Demand That State Farm Violate the Law ................... 5

7

        B.     Plaintiffs Have Failed to Plead a Viable Unruh Act Claim ....................... 5

8

        C.     Plaintiffs' Negligence Claim Fails ............................................................ 7

9

10

               1.     Plaintiffs Cannot Escape the Economic Loss Rule by
                      Vaguely Asserting They Have Suffered Emotional Distress .......... 7

11

               2.     There Is No Tort Duty of Care Governing the Calculation of
                      Insurance Premiums.................................................................... 10

12

               3.     Plaintiffs Have Not Alleged Negligence Caused Them Harm ...... 12

13

        D.     Plaintiffs Allege No Violation of Insurance Code Section 10140........... 12

14

        E.     The Follow-On UCL Claim Fails ............................................................ 13

15

IV.    CONCLUSION ................................................................................... 13

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allen v. Dollar Tree Stores, Inc.*,
    475 F. App'x 159 (9th Cir. 2012) ........................................................................ 1, 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................ 4

*Bily v. Arthur Young & Co.*,
    3 Cal. 4th 370 (1992) ......................................................................................... 11

*Bogard v. Emps. Cas. Co.*,
    164 Cal. App. 3d 602 (1985) ..................................................................... 3, 9, 10

*Cabral v. Ralphs Grocery Co.*,
    51 Cal. 4th 764 (2011) .................................................................................. 11, 12

*Chavez v. Wal-Mart Stores, Inc.*,
    2014 WL 12591252 (C.D. Cal. June 2, 2014) .................................................... 8

*Conley v. Gibson*,
    355 U.S. 41 (1957) .............................................................................................. 4

*Diamond v. United States*,
    2015 WL 11215851 (C.D. Cal. May 15, 2015) .................................................. 4

*Electric Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) .............................................................................. 4

*Garcia v. City of Los Angeles*,
    2020 WL 2129830 (C.D. Cal. Feb. 15, 2020) .................................................... 5

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*,
    742 F.3d 414 (9th Cir. 2014) .......................................................................... 6, 7

*Kasramehr v. Wells Fargo Bank N.A.*,
    2011 WL 12473383 (C.D. Cal. May 18, 2011) .......................................... 3, 8, 9

*Koebke v. Bernardo Heights Country Club*,
　　36 Cal. 4th 824 (2005) ............................................................................ 2, 6, 7

*Leadsinger, Inc. v. BMG Music Pub.*,
　　512 F.3d 522 (9th Cir. 2008) ..................................................................... 2, 7

*Levine v. Blue Shield of California*,
　　189 Cal. App. 4th 1117 (2010) ............................................................. 10, 11

*Lewis v. Casey*,
　　518 U.S. 343 (1996) ..................................................................................... 10

*Long Beach Mem'l Med. Ctr. v. Kaiser Found. Health Plan, Inc.*,
　　71 Cal. App. 5th 323 (2021) ......................................................................... 11

*Martinez v. Cot'n Wash, Inc.*,
　　81 Cal. App. 5th 1026 (2022) ..................................................... 2, 3, 4, 5, 7

*Mills v. Netflix, Inc.*,
　　2020 WL 548558 (C.D. Cal. Feb. 3, 2020) ................................................... 4

*Plater v. United States*,
　　359 F. Supp. 3d 930 (C.D. Cal. 2018) ....................................................... 8, 9

*Potter v. Firestone Tire & Rubber Co.*,
　　6 Cal. 4th 965 (1993) ..................................................................................... 8

*Steckman v. Hart Brewing, Inc.*,
　　143 F.3d 1293 (9th Cir. 1998) ....................................................................... 8

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
　　802 F. Supp. 2d 1125 (C.D. Cal. 2011) ........................................................ 5

*Thomas v. Stenberg*,
　　206 Cal. App. 4th 654 (2012) ...................................................................... 11

**STATUTES**

Cal. Ins. Code § 10140.............................................................................. 3, 12, 13

# I.   INTRODUCTION

At the center of Plaintiffs' complaint is a paradox:  the assertion that State Farm engaged in race discrimination because it *refused* to discriminate among life insurance applicants based on their race.  Plaintiffs allege that State Farm evaluates the kidney function of life insurance applicants using a race-neutral medical formula developed by the Mayo Clinic—a formula that evaluates a patient's "glomerular filtration rate" or "eGFR."  Dkt. 32 ("Compl.") ¶¶ 22–29.  But Plaintiffs contend that using a race-neutral eGFR formula supposedly underestimates the kidney health of African-Americans like Plaintiffs—so, according to Plaintiffs, State Farm *should* have adjusted their eGFR score based on their race.  *See id.* ¶¶ 21–23.  And Plaintiffs assert that State Farm's refusal to "consider race when determining eGFR" resulted in their paying more for insurance premiums.  *Id.* ¶ 22.  State Farm's refusal "to consider race in determining a person's eGFR score" is the basis for Plaintiffs' claims for violation of the Unruh Act, negligence, violation of the insurance code, and the UCL.  *Id.* ¶ 63; *see also id.* ¶¶ 69, 82, 91.

As State Farm explained in its motion to dismiss, all of Plaintiffs' claims are legally barred and insufficiently alleged.  *See* Dkt. 34-1 ("Mot.").  Despite already having an opportunity to review State Farm's arguments and amend their Complaint, Plaintiffs have alleged no facts supporting a cognizable claim.  And Plaintiffs' opposition confirms that the Court should dismiss this action with prejudice.  In fact, Plaintiffs offer no response *at all* to several of State Farm's arguments for dismissal— including the *lead argument* in the motion, which pointed out that all of Plaintiffs' claims fail because they depend on the allegation that State Farm should have *broken* California law by collecting race data and using it to adjust eGFR scores.  Mot. at 9–11.  By failing to respond to this argument, Plaintiffs have tacitly conceded that all of their claims should be dismissed.  *See, e.g.*, *Allen v. Dollar Tree Stores, Inc.*, 475 F. App'x 159 (9th Cir. 2012) ("The court properly dismissed Allen's harassment and retaliation claims because her opposition to the motion to dismiss failed to respond to Dollar Tree's argument that those claims were time-barred.").

As for State Farm's arguments that Plaintiffs have chosen to address, their contentions lack merit.

***Unruh Act.*** As State Farm explained, the Unruh Act prohibits "*intentional* acts of discrimination"—not the alleged disparate impact of race-neutral policies—so Plaintiffs' Unruh Act claim fails. *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 853 (2005); Mot. at 11–12. In response, Plaintiffs argue that the mere use of the Mayo Clinic's race-neutral formula somehow constitutes intentional race discrimination, because State Farm allegedly "knew" that the formula purportedly generates lower eGFR scores for African-Americans. Dkt. 35 ("Opp.") at 3. But the complaint does not actually allege that the use of the Mayo Clinic formula itself harmed Plaintiffs—rather, the complaint alleges that Plaintiffs were harmed because "State Farm does not consider race when determining eGFR." Compl. ¶ 22.

Even if the complaint did sufficiently allege that the Mayo Clinic formula had some disparate impact on African-Americans that harmed Plaintiffs and that State Farm "knew" about this disparate impact, knowing that a race-neutral formula has a disparate impact is not actionable under the Unruh Act. *See Martinez v. Cot'n Wash, Inc.*, 81 Cal. App. 5th 1026, 1038 (2022) ("[W]e do not recognize a failure to address known discriminatory effects of a policy as alone sufficient to establish intentional discrimination under the Unruh Act.").

***Negligence.*** Plaintiffs' negligence claim fails under California's economic loss rule, which bars Plaintiffs from using a tort claim to recover purported economic losses arising from their contractually determined insurance premiums. Mot. at 13–15. Plaintiffs do not dispute that their claims are barred by that rule—but they ask for leave to amend so that they can add allegations purportedly showing the infliction of non-economic harm in the form of "emotional distress." Opp. at 5. But Plaintiffs already had an opportunity to amend in response to the same economic loss argument in State Farm's first motion to dismiss (and made no material changes in their amended complaint), and they do not explain why they should be allowed to further delay

dismissal of their claim by getting another bite at the apple.  *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (leave to amend is properly denied when there is "undue delay" or a "dilatory motive").

In any event, amendment would be futile.  Claims for negligent infliction of emotional distress are reserved for cases where either (1) the plaintiff was at risk of physical injury, or (2) there are "highly unusual" facts showing particularly extreme distress, such as when a defendant "mishandled the cremated remains" of a loved one. *Kasramehr v. Wells Fargo Bank N.A.*, 2011 WL 12473383, at *9 (C.D. Cal. May 18, 2011).  Plaintiffs were obviously not at risk of physical injury, and they do not attempt to show that their allegations fall under the "specialized classes of cases" where an emotional distress claim is otherwise allowed.  *See id.*  Plaintiffs also do not attempt to explain how they could possibly show the kind of "*severe* emotional distress" required to state a claim.  *Bogard v. Emps. Cas. Co.*, 164 Cal. App. 3d 602, 618 (1985) (negligent infliction of emotional distress claim precluded where "appellants failed to allege facts which indicate they suffered *severe* emotional distress").

Plaintiffs' negligence claim also fails because there is no tort duty governing the calculation of insurance premiums.  Mot. at 15–18.  Plaintiffs do not identify any California case holding that life insurers can be liable for "negligence" when a policyholder complains that the premiums they pay are too high.  In fact, Plaintiffs expressly *abandon* any argument that State Farm "owed them a duty of reasonableness," Opp. at 6—meaning that Plaintiffs have effectively abandoned any claim for negligence.

***Insurance Code Section 10140.***  California Insurance Code section 10140, like the Unruh Act, prohibits only intentional discrimination.  Mot. at 19–21.  Plaintiffs do not dispute this, and simply repeat their Unruh Act argument that using the race-neutral Mayo Clinic formula is somehow equivalent to intentional discrimination.  Opp. at 7. That argument fails, just as it does in the Unruh Act context.  *See Martinez*, 81 Cal. App. 5th at 1038 (knowledge of alleged "discriminatory effects of a policy" does not show "intentional discrimination").

***The UCL "Unlawful" Claim.***  Plaintiffs do not dispute that their UCL claim is completely dependent on their other claims—and because those other claims fail, the UCL claim fails too.  Mot. at 21.

## II.  LEGAL STANDARD

Plaintiffs' opposition begins by misstating the applicable standard for evaluating a motion to dismiss.  Relying on *Conley v. Gibson*, 355 U.S. 41 (1957), Plaintiffs argue that dismissal requires a showing "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46; Opp. at 1–2.  But *Conley*'s "no set of facts" standard was overruled more than a decade ago in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which established that a complaint must include specific factual allegations that show the plaintiff is entitled to relief—i.e., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also, e.g.*, *Diamond v. United States*, 2015 WL 11215851, at *9 n.5 (C.D. Cal. May 15, 2015) (*Twombly* "explicitly overruled the earlier standard articulated in *Conley*" (quotation marks and citation omitted)).

After *Twombly* and *Iqbal*, establishing "an 'entitlement to relief' requires 'more than labels and conclusions'" and "plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995–996  (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555, 557).  "A formulaic recitation of the elements of a cause of action will not suffice." *Mills v. Netflix, Inc.*, 2020 WL 548558, at *1 (C.D. Cal. Feb. 3, 2020).  Plaintiffs do not even try to show that their complaint satisfies the *Twombly*/*Iqbal* "plausibility" standard, and their invocation of the defunct "no set of facts" test from *Conley* is effectively an admission that their complaint cannot meet the now-governing pleading standard.

### III.  ARGUMENT

**A.    Plaintiffs Cannot Demand That State Farm Violate the Law**

Plaintiffs' complaint alleges that State Farm should not have used a race-neutral eGFR number when evaluating their life insurance applications, but instead should have used a race-adjusted "African-American number."  Compl. ¶¶ 21, 23.  Plaintiffs' suit is thus expressly premised on the proposition that State Farm was "required" to consider race when evaluating life insurance applications.  *See, e.g., id.* ¶ 63 (alleging State Farm was "required . . . to consider race in determining a person's eGFR score").  The problem with that theory, as State Farm explained in its motion, is that the California Insurance Code prohibits *any* consideration of race in the evaluation of life insurance applications—so Plaintiffs' suit effectively rests on the allegation that State Farm should have *broken* California law.  Mot. at 9–10.

Plaintiffs do not respond to this point—at all—in their brief.  Plaintiffs have thus waived any opposition to State Farm's argument that their claims depend on requiring State Farm to break California law, and all of their claims should be dismissed with prejudice.  *See, e.g., Allen*, 475 F. App'x at 159 ("The court properly dismissed Allen's harassment and retaliation claims because her opposition to the motion to dismiss failed to respond to Dollar Tree's argument that those claims were time-barred."); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp*., 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."); *see also Garcia v. City of Los Angeles*, 2020 WL 2129830, at *8 n.17 (C.D. Cal. Feb. 15, 2020) (plaintiffs waived a claim by failing to address an argument for its dismissal "in their opposition").

**B.    Plaintiffs Have Failed to Plead a Viable Unruh Act Claim**

Plaintiffs cannot bring a claim under the Unruh Act without "allegations supporting 'willful, affirmative misconduct' with the specific intent 'to accomplish discrimination on the basis of [a protected trait].'"  *Martinez*, 81 Cal. App. 5th at 1036

(quoting *Koebke*, 36 Cal. 4th at 853).  Plaintiffs allege no facts even suggesting State Farm acted with the specific intent to accomplish race discrimination.  To the contrary, they repeatedly allege that "State Farm does *not* consider race" when evaluating applicants' health and calculating their rates.  Compl. ¶ 22 (emphasis added); *id.* ¶ 63 (criticizing State Farm because it does not "consider race in determining a person's eGFR score").  Such allegations preclude any Unruh Act claim.  Mot. at 11–12.

In response, Plaintiffs say that State Farm's mere "use of the Mayo Clinic's eGFR formula" constitutes intentional race discrimination because it purportedly "result[s] in unequal treatment of . . . African-American policy holders."  Opp. at 3.  But the complaint does not allege any specific facts showing that the use of the Mayo Clinic formula caused any harm to Plaintiffs—rather, the complaint alleges that Plaintiffs received lower eGFR scores because "State Farm does not consider race when determining eGFR."  Compl. ¶ 22; *see also id.* ¶¶ 21, 23 (alleging Plaintiffs would have received superior eGFR scores, and their insurance premiums allegedly would have been lower, if their scores were adjusted based on their race); Mot. at 18–19.

Even if Plaintiffs' complaint alleged facts showing that they had somehow been disparately impacted by the use of the Mayo Clinic formula, a claim of disparate impact is not cognizable under the Unruh Act.  The Act "contemplates 'willful, affirmative misconduct on the part of those who violate the Act' and . . . a plaintiff must therefore allege, and show, more than the disparate impact of a facially neutral policy."  *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc. (GLAAD)*, 742 F.3d 414, 425 (9th Cir. 2014) (quoting *Koebke*, 36 Cal. 4th at 853).

Plaintiffs say that State Farm purportedly "knew African-Americans were under-represented in the Mayo Clinic's formula," and that this alleged knowledge of the formula's disparate impact on African-Americans turns State Farm's use of a race-neutral formula into an act of "intentional discrimination."  Opp. at 4.  But a plaintiff cannot transform a claim of disparate impact into a claim of intentional discrimination merely by asserting that the defendant "knew" about the alleged disparate impact.  In

*GLAAD*, the plaintiffs argued—just like Plaintiffs here—that "intentional discrimination under the Unruh Act consists of knowledge that a protected right is substantially likely to be infringed upon, and a failure to act upon that knowledge—'deliberate indifference.'" 742 F.3d at 427.  The Ninth Circuit rejected this argument, explaining that "[w]e decline to adopt the deliberate indifference standard in light of the California Supreme Court's statement that a showing of intentional discrimination under the Unruh Act contemplates 'willful, *affirmative* misconduct.'"  *Id.* (quoting *Koebke*, 36 Cal. 4th at 853).  And just a few months ago, the California Court of Appeal squarely held that "we do not recognize a failure to address known discriminatory effects of a policy as alone sufficient to establish intentional discrimination under the Unruh Act."  *Martinez*, 81 Cal. App. 5th at 1038.

That resolves Plaintiffs' Unruh Act claim.  State Farm's use of the race-neutral Mayo formula—developed by one of the world's preeminent medical institutions—is not intentional race discrimination.  Because Plaintiffs have not and cannot allege that State Farm actually engaged in intentional discrimination, their Unruh Act claim should be dismissed with prejudice.

## C.   Plaintiffs' Negligence Claim Fails

### 1.   Plaintiffs Cannot Escape the Economic Loss Rule by Vaguely Asserting They Have Suffered Emotional Distress

Plaintiffs do not dispute that their negligence claim is barred by the economic loss rule.  *See* Opp. at 5; Mot. at 13–15.  Instead, they say that they should "be granted leave to amend" so that they can allege "additional facts" that will supposedly show that either they or putative class members suffered non-economic losses in the form of "mental and emotional distress."  Opp. at 5.

This dilatory tactic should be rejected.  Plaintiffs already amended their complaint in response to State Farm's first motion to dismiss—which raised the same economic loss argument that State Farm raised in this motion.  Plaintiffs do not explain why they did not include their new proposed allegations in their newly amended complaint, which

made no material changes to the original complaint.  That they now request leave to amend *again*, in response to the same argument they already had an opportunity to respond to, is a clear indication that this is a delay tactic to stave off the dismissal of this action.  Denial of leave to amend is appropriate where, as here, the plaintiff has engaged in "undue delay," shown a "dilatory motive," and already failed to cure the deficiencies in its complaint with prior amendments.  *Leadsinger*, 512 F.3d at 532.

In any event, leave to amend should also be denied because the proposed amendment would be futile.  *See id.* (leave to amend is also not warranted "if amendment 'would be an exercise in futility'" (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1297 (9th Cir. 1998)).  "To allege a claim for Negligent Infliction of Emotional Distress ('NIED'), Plaintiff[s] must show that (1) Defendants owed [Plaintiffs] a duty; (2) they breached that duty; (3) Plaintiff[s] ha[ve] suffered serious emotional distress as a result, which Defendants should have foreseen; and (4) damages."  *Plater v. United States*, 359 F. Supp. 3d 930, 942–43 (C.D. Cal. 2018).  "'[W]ith rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests.'"  *Id.* at 943 (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993)).  The "rare exceptions" are limited to "certain specialized classes of cases" where the emotional distress is both "highly unusual" and "predictable"—such as "where a defendant mishandled the cremated remains of a plaintiff's brother, a doctor negligently advised a plaintiff's wife that she suffered from syphilis, where the defendant owed the plaintiff fiduciary or quasi-fiduciary duties, and where a plaintiff witnessed injury to a close relative."  *Kasramehr*, 2011 WL 12473383, at *10.

This case does not involve any risk of physical injury to Plaintiffs (as it is about alleged overcharges for life insurance premiums), and Plaintiffs have not shown that their case is one of those "rare exceptions" where a negligent emotional distress claim can otherwise proceed.  *See id.* ("Plaintiff has not alleged that she suffered any threat of physical injury, nor does she fall into any of these exceptions to the general rule."); *Plater*, 359 F. Supp. 3d at 943 ("Plaintiff has not alleged that Vences or Paiva threatened

physical injury, or that her case is one of the rare exceptions.").  Nor could they—this case does not involve emotionally charged conduct like mishandling a corpse, or a sensitive relationship like that between a doctor and patient.  Rather, Plaintiffs' relationship with State Farm is contractual and economic, which is not enough to support a negligent emotional distress claim.  *See Kasramehr*, 2011 WL 12473383, at *10 (explaining that a borrower's "relationship with [a] lender" is not enough to support an emotional distress claim, even in highly distressing cases involving wrongful home foreclosure).  For that reason alone, their proposed emotional distress claim would be futile.

In addition, Plaintiffs have not argued that they actually suffered "serious emotional distress" at all.  *Plater*, 359 F. Supp. 3d at 943.  As California courts have explained, the emotional distress must be particularly "severe" to state a claim—"[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it."  *Bogard*, 164 Cal. App. 3d at 617 (affirming dismissal of emotional distress claims when plaintiffs "failed to set forth any facts which indicate the nature or extent of any mental suffering incurred").

Plaintiffs' opposition vaguely says that Plaintiff Stevens had "concern" for his health because his reported eGFR score was low (Opp. at 5)—but far from showing severe distress, the complaint alleges that Stevens "immediately called" his doctor and learned that his race-adjusted eGFR number was supposedly nine points higher than his race-neutral number.  Compl. ¶ 21.  Plaintiffs do not explain how they could allege, in good faith, any facts showing Stevens underwent the kind of "*severe* emotional distress" required to state a claim based on any fleeting "concern" over his eGFR score.  *See Bogard*, 164 Cal. App. 3d at 618 (affirming dismissal of negligent infliction of emotional distress claim when "appellants failed to allege facts which indicate they suffered *severe* emotional distress," because "[s]erious emotional distress is an essential element of the cause of action for negligent infliction of emotional distress").

In fact, Plaintiffs do not even say that Stevens experienced emotional distress at

all—rather, they merely say he experienced "concern," while arguing that they "are informed and believe" that *other* "African-American policy holders who were denied coverage" purportedly experienced "mental and emotional distress." Opp. at 5. But again, Plaintiffs do not identify specific facts they would allege that show these other, unidentified "African-American policy holders" experienced "*severe* emotional distress." *Bogard*, 164 Cal. App. 3d at 618. And even if Plaintiffs could allege that some *other* putative class members suffered distress, that does not help Plaintiffs—who must show that they personally have a cognizable claim for relief. *See, e.g.*, *Chavez v. Wal-Mart Stores, Inc.*, 2014 WL 12591252, at *2 (C.D. Cal. June 2, 2014) ("Plaintiff must personally satisfy the pleading requirements of each claim that she brings, and she cannot defeat a motion to dismiss by relying on class allegations."); *cf. Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action. . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (quotation marks and citation omitted)).

Ultimately, Plaintiffs cannot escape the bar of the economic loss rule with a belated request for another amendment—particularly when they have identified no facts that would actually state a non-barred claim. The negligence claim should be dismissed with prejudice.

## 2. There Is No Tort Duty of Care Governing the Calculation of Insurance Premiums

Plaintiffs' negligence claim also independently fails because an insurer does not owe policyholders a tort duty of care when calculating insurance premiums. Mot. at 15–18. No California case has ever imposed a tort duty of care on an insurer's calculation of insurance premiums—and the caselaw forecloses any such duty. *Id.* California courts have held that "an insurer has no special common law duties as to a purchaser of insurance concerning the calculation of premiums, whether the purchaser is a potential

insured or an insured." *Levine v. Blue Shield of California*, 189 Cal. App. 4th 1117, 1132 (2010).  And another recent California Court of Appeal ruling confirms that imposing a tort duty requiring insurance payments to be "reasonable" would be unworkable.  *See Long Beach Mem'l Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 71 Cal. App. 5th 323, 337 (2021).

In response, Plaintiffs argue that *Levine* is irrelevant because the plaintiffs in that case alleged that the insurer "had a duty to disclose to them that their monthly health care premiums would have been lower if they had structured their coverage differently"—and Plaintiffs are not bringing a duty-of-disclosure claim here.  Opp. at 5–6.  But this is a distinction without a difference.  While it is true that *Levine* rejected a duty-to-disclose tort claim, it did so because "an insurer has no special common law duties as to a purchaser of insurance concerning the calculation of premiums." *Levine*, 189 Cal. App. 4th at 1132.  That holding fully applies to Plaintiffs' negligence claim, which is premised on the allegation that State Farm owes them a common-law tort duty when calculating premiums and that the premiums State Farm calculated are too high. *See* Compl. ¶¶ 80–82.  Plaintiffs do not explain how their negligence claim can proceed without squarely violating *Levine*'s holding that insurers do not owe tort duties "concerning the calculation of premiums." *Levine*, 189 Cal. App. 4th at 1132.

Plaintiffs also argue that *Long Beach* is inapposite because "Plaintiffs do not contend that Defendants owed them a duty of reasonableness." Opp. at 6.  But far from helping Plaintiffs, this sweeping concession confirms that Plaintiffs' negligence claim should be dismissed.  "The threshold element of a cause of action for negligence is the existence of a duty *to use due care*." *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 396 (1992) (emphasis added).  And a duty to use "due care" is merely a synonym for a duty to act reasonably: "Under general negligence principles, ... a person ordinarily is obligated to exercise *due care* in his or her own actions *so as not to create an unreasonable risk* of injury." *Thomas v. Stenberg*, 206 Cal. App. 4th 654, 662 (2012) (emphasis added); *see also Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 768 (2011)

(explaining that California's codification of negligence principles at Cal. Civ. Code § 1714 (a) simply establishes "the general duty of each person to exercise . . . reasonable care"). If Plaintiffs are not seeking to impose a "duty of reasonableness" on State Farm (Opp. at 6), then they have no negligence claim at all. That is yet another reason that their claim should be dismissed with prejudice.

### 3.   Plaintiffs Have Not Alleged Negligence Caused Them Harm

Plaintiffs' negligence claim also fails because they allege no facts showing that State Farm's purported "negligence"—the use of the Mayo Clinic formula—actually caused them harm. Mot. at 18–19. Although the complaint includes vague allegations claiming that the Mayo Clinic formula is not widely used (*see* Compl. ¶¶ 27–30), Plaintiffs do not explain how State Farm's use of the Mayo Clinic formula actually harmed them. Instead, Plaintiffs allege that they were harmed because State Farm refused to adjust their eGFR scores based on their race, as Stevens's personal doctor did when he adjusted Stevens's score. *Id.* ¶ 21; *see also id.* ¶ 23 (Plaintiffs allegedly would not have been harmed if State Farm adjusted their race-neutral scores and used an "African-American number"); Mot. at 18–19.

Plaintiffs do not respond to this point at all, and thus have waived any opposition to dismissal of their negligence claim on this ground. *See supra* p. 5. The claim should be dismissed with prejudice for this additional reason as well.

### D.   Plaintiffs Allege No Violation of Insurance Code Section 10140

California Insurance Code section 10140 prohibits *intentional* racial discrimination in life insurance underwriting—but Plaintiffs have not alleged any facts showing any discrimination at all. *See supra* p. 6. Further, even if Plaintiffs' complaint could be construed as alleging a disparate impact theory, section 10140, just like the Unruh Act, covers only intentional discrimination, not the alleged disparate impact of a race-neutral policy. Mot. at 20–21. Plaintiffs' Insurance Code claim thus fails for the same reasons as their Unruh Act claim.

In response, Plaintiffs do not dispute that section 10140 is analogous to the Unruh Act, and they do not dispute that section 10140 also requires intentional discrimination, not disparate impact.  Instead, Plaintiffs simply repeat their Unruh Act argument that the mere "use" of the Mayo Clinic formula "demonstrate[s] an intent to discriminate."  Opp. at 7.  As already explained, that is false.  *Supra* pp. 6–7.  Using a race-neutral eGFR formula, developed by one of the world's preeminent medical institutions, is not intentional racial discrimination.  Plaintiffs' section 10140 claim should be dismissed with prejudice for the same reasons as their Unruh Act claim.

### E.     The Follow-On UCL Claim Fails

Finally, Plaintiffs' claim under the "unlawful" prong of the UCL is completely dependent on their other claims—and because the other claims fail, the UCL claim must as well.  Mot. at 21.  Plaintiffs' opposition does not dispute or respond to this point, and instead simply repeats their claim that using the Mayo Clinic formula is somehow discriminatory and "unlawful."  Opp. at 8.  Because Plaintiffs have not shown that using the Mayo Clinic's race-neutral formula actually violates any law—or even harmed them—their UCL claim fails.  Mot. at 21.

### IV.   CONCLUSION

Despite already having an opportunity to review State Farm's arguments and amend their Complaint, Plaintiffs have not alleged any facts supporting a cognizable claim.  The use of a *race-neutral* eGFR formula is not intentional race discrimination.  Plaintiffs' action should be dismissed in its entirety with prejudice.

Dated:  January 6, 2023

GIBSON, DUNN & CRUTCHER LLP

By:     */s/ Bradley J. Hamburger*
Bradley J. Hamburger

Attorneys for Defendants State Farm Mutual Automobile Insurance Company, State Farm General Insurance Company, and State Farm Life Insurance Company

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Civil Local Rule 11-6.2, the undersigned, counsel of record for Defendants State Farm Mutual Automobile Insurance Company (erroneously sued as State Farm Mutual, Inc.), State Farm General Insurance Company (erroneously sued as State Farm General Incorporated), and State Farm Life Insurance Company, certifies that this brief contains 4,483 words, which complies with the word limit of L.R. 11-6.1.

Dated:  January 6, 2023

By: _____ */s/ Bradley J. Hamburger* _____
Bradley J. Hamburger

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS