GIBSON, DUNN & CRUTCHER LLP
MARCELLUS A. MCRAE, SBN 140308
  MMcrae@gibsondunn.com
HEATHER L. RICHARDSON, SBN 246517
  HRichardson@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  BHamburger@gibsondunn.com
TIAUNIA HENRY, SBN 254323
  THenry@gibsondunn.com
DANIEL NOWICKI, SBN 304716
  DNowicki@gibsondunn.com
NASIM KHANSARI, SBN 320719
  NKhansari@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071
Telephone:  213.229.7000
Facsimile:   213.229.7520

Attorneys for Defendants State Farm Mutual Automobile Insurance Company (erroneously sued as State Farm Mutual, Inc.), State Farm General Insurance Company (erroneously sued as State Farm General Incorporated), and State Farm Life Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEL STEVENS and LADALE JACKSON, individually and on behalf of all similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL, INC.; STATE FARM GENERAL INCORPORATED; STATE FARM LIFE INSURANCE COMPANY and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 2:22-cv-06362 FLA (MAAx)<br><br>**DEFENDANTS STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM GENERAL INSURANCE COMPANY, AND STATE FARM LIFE INSURANCE COMPANY'S RESPONSE TO COURT'S JULY 28, 2023 ORDER TO SHOW CAUSE**<br><br>Action Filed:   July 6, 2022<br>FAC Filed:      December 5, 2022<br>Trial Date:     None set |

## I.   INTRODUCTION

While Defendants believe this case is without legal and factual merit, there is no denying that it would be a complex case to litigate through trial. Adjudicating Plaintiffs' claims if they advance past the pleadings stage will entail, among other things, the presentation and assessment of expert evidence concerning scientific issues. As a result, far in excess of $75,000 has been put in controversy here, given that the Unruh Act provides for an award of fees if Plaintiffs are the prevailing parties.

Plaintiffs' claims are based on their allegations that (1) the Mayo Clinic's test for evaluating the "estimated Glomerular Filtration Rate" (or "eGFR") of the kidneys is intrinsically biased against African American individuals, and (2) Plaintiffs paid more for life insurance because Defendants used the Mayo Clinic eGFR test to estimate Plaintiffs' kidney health without applying a race-based adjustment to their eGFR scores. Bringing this case to trial would require substantial expert and lay witness discovery about eGFR and kidney health, the development and operation of the Mayo Clinic test, statistical studies of eGFR scores across populations and the presence or absence of racial disparities in eGFR scores, the methodologies that Defendants use to calculate life insurance premiums, and the impact of eGFR (if any) on life insurance premiums. And before any trial occurs, the parties would likely engage in significant motions practice, including over whether Plaintiffs have stated a viable claim.

As Defendants alleged in the Notice of Removal, this case thus readily meets the $75,000 amount in controversy requirement under 28 U.S.C. § 1332. Plaintiffs are each seeking at least $16,000 in economic damages and statutory penalties, as well as attorneys' fees—and, given the complexity of this case, the fees alone could easily exceed $75,000 per Plaintiff. Plaintiffs have not contested Defendants' jurisdictional allegations in the Notice of Removal (including that complete diversity of citizenship exists) and have not disputed that each Plaintiff seeks at least $75,000 in relief. *See* Dkt. 21 at 3 ("Neither party disputes jurisdiction or service and Plaintiffs do not intend to file a motion to remand.").

For multiple reasons, this action—which is an unusually complex Unruh Act case given the novel theory of liability turns on scientific issues that can only be resolved through expert testimony—puts in controversy at least $75,000 per Plaintiff.

*First*, as the Ninth Circuit has explained, a plaintiff's "concession of diversity jurisdiction . . . is strong evidence that the amount in controversy exceeds $75,000." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018). "Such a concession is tantamount to a plaintiff expressly alleging damages in excess of the jurisdictional amount, which we accept as the amount in controversy if done in good faith." *Id.* Here, Plaintiffs stated in the joint Rule 26(f) report that they do not dispute that diversity jurisdiction exists, and that, without more, is compelling evidence that the amount in controversy exceeds $75,000.

*Second*, the potential attorneys' fees alone amount to at least $75,000 per Plaintiff (or $150,000 in total). "[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018). That rule applies here because, under the Unruh Act, Plaintiffs have a statutory right to recover attorneys' fees if they prevail, and those fees will likely be significant if this case proceeds to trial. As the parties have explained, "the need for potentially substantial expert testimony on kidney function and eGFR scores and formulas calculating such scores" means that any trial would likely last 6 to 8 days. Dkt. 21 at 11. The parties also anticipate significant motions practice. *Id.* at 7-8.

Plaintiffs' counsel has already obtained a fee award in another case based on a $750 hourly rate, and has filed a more recent fee demand claiming a $900 hourly rate. Even assuming the lower $750 rate is appropriate, Plaintiffs' counsel would only need to spend 200 hours litigating this case in order to expend $150,000 in fees (i.e., $75,000 per Plaintiff). And litigating this case to its conclusion would likely require more than 200 hours of time from Plaintiffs' counsel, even using very conservative estimates and assumptions.

*Third*, each Plaintiff has also put in controversy at least $16,000 in damages and statutory penalties. Under the Unruh Act, each Plaintiff could recover both his actual damages (i.e., the insurance premiums they allegedly overpaid), and a $4,000 statutory penalty for each year in which they allegedly overpaid for insurance. *See* Cal. Civ. Code § 52(a); *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000) (under the Unruh Act, "actual damages and statutory damages [are] two separate categories of damages that a plaintiff may recover"). Plaintiffs allege they each incurred actual damages of $4,000 per year—i.e., they claim they paid an additional $4,000 each year in insurance premiums as a result of State Farm's allegedly unlawful use of the Mayo Clinic eGFR test. *See* Dkt. 32 ¶¶ 20, 23 (Plaintiff Stevens alleging he paid "$4,000 per year" in increased insurance premiums and Plaintiff Jackson alleging he paid "approximately $4,000 more annually" for a higher premium). Based on a two-year statute of limitations, each Plaintiff could conceivably recover (1) $8,000 in actual damages and (2) $8,000 in statutory penalties.

## II.  LEGAL STANDARD

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). "In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Id.*

"Where, as here, it is unclear from the face of the complaint whether the amount in controversy exceeds $75,000, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018) (quotation marks omitted). "In assessing the amount in controversy, we may consider allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence relevant to the amount in controversy." *Id.*; *see also Swans v. Fieldworks, LLC*, 2023 WL 196918, at *2–*3 & n.5 (establishing fees in controversy through declaration from defendant's counsel and "filings" from

other cases showing plaintiff's customary rate); *Salazar v. Ford Motor Co.*, 2022 WL 16855563, at *4 (C.D. Cal. Nov. 10, 2022) (fees in controversy were shown by defendant's declaration and filings showing amounts sought by plaintiff's counsel in other cases).

"An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite . . . amount.'" *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). And "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Id.* at 922. "[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have some reasonable ground underlying them." *Id.* at 927 (quotation marks omitted).

### III.  ARGUMENT

**A.  Under Binding Ninth Circuit Authority, the Plaintiffs' Concession of Jurisdiction Is Strong Evidence That More Than $75,000 Is In Controversy**

Plaintiffs, in the parties' joint Rule 26(f) report, conceded that diversity jurisdiction exists here. Plaintiffs expressly agreed that there is complete diversity given that both Plaintiffs are citizens of California and Defendants are citizens of Illinois. Dkt. 21 at 3; *see also* Dkt. 1 ¶¶ 7–13. And Plaintiffs also expressly agreed that they seek "allegedly overpaid insurance premiums, statutory penalties under the Unruh Act, and attorneys' fees" in excess of $75,000. Dkt. 21 at 3; *see also* Dkt. 1 ¶¶ 19–30. Plaintiffs thus joined with Defendants in representing that "Subject matter jurisdiction in this action is properly based on diversity, under 28 U.S.C. § 1332 because the Parties are diverse and the amount in controversy exceeds $75,000." Dkt. 21 at 3. As the parties jointly explained, "[n]either party disputes jurisdiction or service and Plaintiffs do not intend to file a motion to remand." *Id.*

These concessions are legally significant. As the Ninth Circuit explained in *Chavez*, a plaintiff's "concession of diversity jurisdiction . . . is strong evidence that the

amount in controversy exceeds $75,000." 888 F.3d at 416. This makes good sense—the plaintiff "is the master of her complaint, and her concession evinces a good faith belief that her complaint seeks over $75,000." *Id.* A plaintiff's concession that diversity jurisdiction exists is thus "tantamount to a plaintiff expressly alleging damages in excess of the jurisdictional amount," which courts "accept as the amount in controversy if done in good faith." *Id.*

*Chavez* is directly on point and dispositive. There, as here, the plaintiff did not contest removal, and "the parties filed a Stipulated Discovery Plan and Scheduling Order stating: 'The parties agree that this Court has jurisdiction over this matter on the basis of diversity jurisdiction.'" *Chavez*, 888 F.3d at 415. Just as *Chavez* found that concession to be "strong evidence that the amount in controversy exceeds $75,000," *id.* at 416, Plaintiffs' analogous concession in the joint Rule 26(f) report here is also strong evidence that the amount in controversy requirement is met.

**B.    Attorneys' Fees Alone Put More Than $75,000 in Controversy**

The Ninth Circuit has "long held . . . that attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018). That is the case here, because if Plaintiffs prevail on their Unruh Act claim, they have a statutory right to attorney's fees. *See* Cal. Civ. Code § 52(a); *see also Engel v. Worthington*, 60 Cal. App. 4th 628, 630 (1997) (holding that "[a] prevailing plaintiff in a Civil Code section 52 action is entitled, as a matter of law, to an attorney fee award."). And the attorneys' fees incurred in litigating the entire case would be recoverable under the Unruh Act because the discriminatory conduct that is alleged to have violated the Act forms the basis for all of Plaintiffs' claims. *See, e.g.*, *Sumner Hill Homeowners' Assoc., Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1035–36 (2012) (holding that "attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed").

Litigating this case through trial would take hundreds of attorney hours. Plaintiffs are challenging the use of the Mayo Clinic's kidney health evaluation test (or "eGFR" test), which, according to Plaintiffs, was based on an allegedly flawed "study" in which "African-American persons were underrepresented." Dkt. 32 ¶ 86. As a result, according to Plaintiffs, the Mayo Clinic test produces statistically disparate results for African Americans—and thus African Americans should have their eGFR scores adjusted to account for their race. *Id.* ¶¶ 86–91. Litigating the veracity of these allegations would require expert testimony regarding how the Mayo Clinic eGFR test was developed and whether it generates statistically anomalous results for African Americans. Plaintiffs also claim that Defendants' alleged use of the Mayo Clinic eGFR test has resulted in them paying $4,000 more per-year for life insurance than they would have paid if Defendants had adjusted their eGFR scores to account for their race. *Id.* ¶¶ 20, 23. Litigating that allegation would require lay testimony to explain the methodology that Defendants use to calculate insurance premiums, as well as expert damages testimony regarding the actual effect of eGFR scores on the premiums that Plaintiffs pay. Litigating this case through trial would thus likely require the use of *at least* two testifying experts (one for each party), as well as the deposition of *at least* four fact witnesses. *See* Dkt. 21 at 5–6, 10.

Defendants estimate that six depositions (two experts and four lay witnesses) would take at least 48 hours (conservatively assuming eight hours per deposition including preparation for the deposition). McRae Decl. ¶ 6; *see also* Khansari Decl. ¶ 2. Given the expert-focused nature of this case, Defendants would likely file a *Daubert* motion, and Defendants also expect to file a motion for summary judgment, and Defendants conservatively estimate that motion practice would require at least 35 hours (25 hours for Plaintiffs to respond to the motion for summary judgment, and 10 hours to respond to a *Daubert* motion). McRae Decl. ¶ 7. Defendants further estimate that Plaintiffs spent at least 15 hours investigating and drafting the complaints, and at least 10 hours responding to Defendants' motion to dismiss. *Id.* ¶¶ 4–5. Defendants

further conservatively estimate that Plaintiffs would spend at least 100 hours on trial preparation, which would include preparing witnesses, completing pre-trial filings, preparing or responding to motions in limine, and preparing for each day of trial. *Id.* ¶ 8. And assuming a 6-day trial (on the low end of the parties' estimate), trial attendance alone would entail at least an additional 48 hours. *Id.* ¶ 9. Defendants have also conservatively assumed that only one lawyer would appear for Plaintiffs at depositions and at trial, and have not included any time for tasks related to written discovery or document production. *Id.* ¶ 10.

| **Conservative Estimate of Time Counsel Would Spend Litigating This Case** | |
|---|---|
| Investigating and Drafting of the Complaints | 15 hours |
| Responding to Motion to Dismiss | 10 hours |
| Depositions of Six Witnesses | 48 hours |
| Responding to Motion for Summary Judgment | 25 hours |
| Responding to *Daubert* Motion | 10 hours |
| Trial Preparation | 100 hours |
| 6-Day Trial | 48 hours |
| **Total** | 256 hours |

All told, litigating this case—even assuming it proceeds to trial on an individual rather than class basis—should take, at a minimum, over 200 hours, using conservative estimates. *See* Khansari Decl. ¶ 3. A comparison with the actual time spent on similar tasks in other cases confirms that this estimate is conservative. *See, e.g.*, *Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1250, 1263 (D. Kan. 2017) (in a single-plaintiff employment discrimination case, plaintiff was entitled to recover "43.2 hours" in fees for drafting a single *Daubert* motion and reply, "71.1 hours" for a summary judgment opposition, and "around 200 hours" to prepare for a 7-day trial, in addition to hours spent on discovery); *Martin v. City of Albuquerque*, 2020 WL 1139054, at *3 (D.N.M. Mar. 9, 2020) (concluding prevailing plaintiff could recover attorney time for

depositions in the amount of "15 hours (preparation and attendance) for each fact witness and 20 hours for each expert").

Plaintiffs' counsel is likely to be able to recover fees at an hourly rate of at least $750, if not more. Khansari Decl. ¶ 4. In *Mykyn Woods v. Greystar Mgmt. Services, LP*, BC670867 (Cal. Sup. Ct.), the court approved the use of a $750 fee for Plaintiffs' lead counsel, Jamon Hicks. *See* Request for Judicial Notice ("RJN"), Ex. 1. This rate is consistent with *McKibben v. McMahon*, 2019 WL 1109683 (C.D. Cal. 2019), which found that attorneys practicing civil rights litigation with 9–15 years of experience could bill $603–$855. And more recently, in *Ripa v. Athas Capital Group*, 18STCV00039 (Cal. Sup. Ct.), Plaintiffs' counsel requested compensation at an even higher hourly rate of $900. *See* Dkt. 1 at 14–15. Although the *Ripa* fee application has not yet been ruled on, even a not-yet-decided fee request is evidence of Plaintiffs' likely fees. *See De Vidal v. Ford Motor Co.*, 2022 WL 17093070, at *4 (C.D. Cal. Nov. 21, 2022) (relying on the amount "sought" by plaintiff's counsel—not necessarily the amount awarded—as support for determining the fee amount in controversy). In any event, using the lower $750 rate that Mr. Hicks has already been awarded in the past, puts the amount in controversy over $75,000 per Plaintiff:

| **Conservative Estimate of Attorneys' Fees** | |
|---|---|
| **Plaintiff Stevens** (128 hours x $750 per hour) | $96,000 |
| **Plaintiff Jackson** (128 hours x $750 per hour) | $96,000 |

A fee award in this range is unsurprising in an Unruh Act case of this complexity. Courts have routinely awarded substantial attorneys' fees in cases involving Unruh Act or discrimination claims like those here. In *Mitchell v. Soleyman*, Case No. 00-12951-AHMCTX (C.D. Cal. Aug. 12, 2002), the court awarded $187,734 in attorneys' fees for an Unruh Act claim involving race discrimination. *See* RJN, Ex. 2. In *Gallegos v. Los Angeles City College*, 2003 WL 23336379 (Los Angeles County Sup. Ct. Oct. 16, 2003), the court awarded $159,277 in attorneys' fees for claims of discrimination and

retaliation. And neither case involved issues of the same complexity as those raised here—involving the operation of an advanced kidney test and the impact of health evaluation scores on insurance premium calculations.

### C. Statutory Penalties and Actual Damages

In addition to attorneys' fees, the Unruh statutory penalties and compensatory damages sought by Plaintiffs would also contribute at least $16,000 per Plaintiff to the amount in controversy in this case.

Although Defendants initially conservatively estimated in the Notice of Removal that Plaintiffs could recover a single $4,000 penalty under the Unruh Act, Plaintiffs could potentially recover two Unruh penalties—amounting to $8,000 per Plaintiff—because, under Plaintiffs' theory, Defendants violated the Act twice. Under the Unruh Act, a plaintiff may recover $4,000 in penalties for "each and every offense" that violates the law. Cal. Civ. Code § 52(a). And here, Plaintiffs allege that they overpaid for insurance premiums at least twice—in 2021 and 2022. *See* Dkt. 32 ¶¶ 20, 23. Under Plaintiffs' theory, then, each Plaintiff may be entitled to two $4,000 statutory penalties under the Unruh Act—one for each occasion on which they allegedly overpaid for insurance. *See Doran v. Embassy Suites Hotel*, 2002 WL 1968166, at *5 (N.D. Cal.) (finding that Unruh "provides for statutory damages based on each specific instance of non-compliance."); *see also Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d 1127, 1141 (E.D. Cal. 2007) (awarding $52,000 for thirteen different violations); *Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1170 (S.D. Cal. 2006) (awarding $12,000 for three visits to the same store).

In addition to statutory penalties, Plaintiffs also seek to recover economic losses under their negligence cause of action. *See Coyle v. Historic Mission Inn Corp.*, 24 Cal. App. 5th 627, 646, (2018). The statute of limitations for negligence is two years. Cal. Civ. Proc. Code § 335.1. And Plaintiffs allege they each paid $4,000 in additional premiums in 2021 and 2022. Therefore, Plaintiffs' claim for negligence puts at least another $8,000 in controversy, exclusive of attorneys' fees.

In total, the amount in controversy as to each Plaintiff, including a conservative calculation of attorneys' fees, is at least $112,000.

### IV.   CONCLUSION

Plaintiffs have not disputed that this Court has jurisdiction over their claims—and for good reason. Litigating this suit through trial—which would require both determining whether a particular kidney test has a statistically disproportionate impact on African Americans, and evaluating the impact of kidney test scores on the calculation of insurance premiums—would cost more than $75,000 per Plaintiff on its own, before adding in their claims for damages. Given that there is complete diversity and the amount in controversy for each Plaintiff exceeds $75,000, the Court has jurisdiction over this action under 28 U.S.C. § 1332 and should discharge the Order to Show Cause.

DATED: August 11, 2023

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Bradley J. Hamburger*
      Bradley J. Hamburger

Attorneys for Defendants State Farm Mutual Automobile Insurance Company (erroneously sued as State Farm Mutual, Inc.), State Farm General Insurance Company (erroneously sued as State Farm General Incorporated), and State Farm Life Insurance Company